No. 2--07--0503          Filed: 4-7-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re ESTATE OF PAMELA K. TREVINO, Deceased | ) ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | No. 06--P--285 |
| (Paula S. Sherman, as Executor of the Estate of Pamela K. Trevino, Deceased, Petitioner-Appellee, v. Edward Trevino, Respondent-Appellant (West Coast Life Insurance Company, Respondent)). | ) ) ) ) ) | Honorable J. Todd Kennedy, Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Edward Trevino appeals from the trial court's order requiring West Coast Life Insurance Company (West Coast) to turn over to his children's guardian the proceeds of an insurance policy, of which he was the named beneficiary, on the life of his ex-wife, Pamela K. Trevino. The trial court ordered this turnover because Pamela and Edward's marital settlement agreement required them to make their children the beneficiaries of any "death benefits." Edward argues that the phrase "death benefits," as used in the agreement, does not include life-insurance proceeds. He further argues that the trial court's reasoning was faulty because it relied on what he claims is Pamela's nonexistent duty of support for her children. Because the phrase "death benefits" is commonly used to describe the proceeds of a life-insurance policy, we conclude that the agreement explicitly covered such proceeds; therefore, we need not consider the trial court's comments about Pamela's duty of support. We hold that the trial court construed the agreement properly, and we affirm its judgment.

Pamela and Edward married in 1989. They had two children, born in 1990 and 1991. The circuit court of Boone County dissolved their marriage on February 14, 2005. The dissolution judgment included a marital settlement agreement, which, in a section headed "Custody, Visitation and Support of the Minor Children," contained a provision as follows:

"Each of the parties agrees to maintain the children of the parties as the beneficiaries of any and all retirement plan[s], pension plans, and death benefits until the minor child [sic] has graduated from high school or college, whichever comes later, but no later than age 23."

The agreement also required each party to release all claims against the other's estate.

Pamela died on September 16, 2006. Pamela had a will leaving her entire estate in trust to her children. Pamela designated Paula S. Sherman as her executor and as trustee of her children's trust. Sherman filed a petition for probate of the will and for letters executory on October 5, 2006; the trial court, after considering the admissibility of a copy of the will, admitted the will and granted the letters.

The source of the present controversy is Pamela's West Coast life-insurance policy, of which Edward was the beneficiary. The parties describe the policy as one Pamela purchased through her employer. The face value of the policy was $100,000. The policy uses the term "death benefit" to describe the money the beneficiary receives on the insured's death.

On December 18, 2006, Sherman petitioned the trial court to implead both Edward and West Coast, asserting that both were necessary parties to a ruling on the disposition of the proceeds. She also asked for an injunction against West Coast's transfer of the proceeds to Edward and for a constructive trust on the proceeds in favor of the children of Edward and Pamela. The trial court granted a temporary injunction on January 9, 2007.

Edward responded to the request for a constructive trust. He argued that he had done nothing to violate the terms of the marital settlement agreement and that a constructive trust was thus inappropriate. Moreover, he asserted that the agreement did not specifically require that life-insurance proceeds go to the children. He further claimed that the petition amounted to the estate suing itself, which was not a proper proceeding. Finally, he argued that Pamela had more than a year to change her beneficiary, but did not do so, and that Illinois law treats a life-insurance policy as a contract unaffected by divorce.

Sherman replied, asserting among other things that the estate was not suing itself, but was suing to enforce the marital settlement agreement. She also alleged that she was the guardian of the estates and persons of the children. Further, she asserted that the agreement was unambiguous in requiring Pamela and Edward to make the children "the beneficiary of their estate."

The trial court issued a memorandum decision on April 9, 2007. It noted that it was ruling on undisputed facts. It ruled that a "death benefit," per the marital settlement agreement, included the proceeds of Pamela's life insurance. It stated that the marital settlement agreement's failure to specifically mention insurance proceeds should not subvert a parent's duty of support, but also found that the language of the agreement was clear. On April 30, 2007, the trial court entered an order requiring West Coast to deliver the proceeds to the children's guardian. Edward timely appealed.

Edward now argues that the principle of "expressio unius est exclusio alterius" ("the expression of one thing is the exclusion of another" (Pollachek v. Department of Professional Regulation, 367 Ill. App. 3d 331, 347 (2006))) requires this court to conclude that the agreement did not include life-insurance proceeds. Edward argues that, because the subject provision specifically referenced only pension and retirement plans, it related only to "death benefits" deriving from these

types of plans. He also argues that Pamela did not have a duty of support, so that the trial court's comments about subversion of that duty showed faulty reasoning.

At the outset, we note that, even though the order Edward challenges is one imposing the equitable remedy of a constructive trust (People ex rel. White v. Travnick, 346 Ill. App. 3d 1053, 1064 (2004)), our review is de novo. Typically, the imposition of a constructive trust is a matter for the discretion of the trial court. Lewsader v. Wal-Mart Stores, Inc., 296 Ill. App. 3d 169, 182 (1998). Here, however, the issue is not whether the trial court abused its discretion in imposing a constructive trust, but whether the marital settlement agreement provided a legal basis for the trial court's order. Edward has asked us to review only the trial court's interpretation of the agreement. Our review of a court's interpretation of a marital settlement agreement is de novo. In re Marriage of Blum, 377 Ill. App. 3d 509, 522 (2007). We note that, provided the marital settlement agreement indeed required Pamela to make her children beneficiaries of all her life-insurance policies, the trial court acted within its discretion in imposing a constructive trust. See Smithberg v. Illinois Municipal Retirement Fund, 192 Ill. 2d 291, 298-301 (2000).

Based upon our review, we conclude that the marital settlement agreement provision concerning death benefits unambiguously required the parties to make their children the beneficiaries of any life-insurance policies. The meaning of a settlement agreement is determined based upon the language used in the agreement. Blum, 377 Ill. App. 3d at 522. The provision at issue speaks to the parties' obligation to make their children the beneficiaries of "any and all retirement plan[s], pension plans, and death benefits." We do not read this language as limiting its application to only the death benefits of retirement and pension plans. Rather, this language speaks of "any and all" death benefits.

Accordingly, we conclude that the "death benefits" referred to in this provision include any and all death benefits, not only those provided by pension and retirement plans.

We note that the phrase "death benefits" is commonly used to describe the proceeds of a life-insurance policy. Indeed, we note that Black's Law Dictionary gives as its sole definition of "death benefits" a "sum or sums paid to a beneficiary from a life-insurance policy on the death of an insured." Black's Law Dictionary 167 (8th ed. 2004). As noted above, the West Coast policy itself utilized the term "death benefit" to describe the money the beneficiary receives on the insured's death. We additionally note that Illinois courts often refer to proceeds of life-insurance policies as "death benefits." See Nelson v. Old Line Life Insurance Co. of America, 341 Ill. App. 3d 144, 147 (2003); Fort Dearborn Life Insurance Co. v. Holcomb, 316 Ill. App. 3d 485, 488 (2000). Because the term "death benefits" is commonly used to describe life-insurance proceeds, the principle of expressio unius est exclusio alterius is inapplicable here; the phrase "death benefits" effectively expresses the inclusion of life-insurance proceeds.

Edward argues that the court's reasoning was faulty when it used Pamela's duty of support for her children to support its interpretation of the clause; he asserts that only he, as the child-support obligor, had such a duty. This argument is to no avail. First, as our discussion has already suggested, reliance on Pamela's duty of support is unnecessary to concluding that the clause includes life-insurance proceeds. Second, the mere fact that Pamela was not a child-support obligor does not mean that she had no duty to support her children. Both parents have an obligation to support their children financially. In re Marriage of Raad, 301 Ill. App. 3d 683, 689 (1998). That that obligation is not embodied in a formal child-support order does not negate it.

For the reasons given, we affirm the trial court's order requiring West Coast to pay the insurance proceeds to the guardian of the children.

Affirmed.

BOWMAN and O'MALLEY, JJ., concur.