THOMAS COWLS, appellant, *v.* ANN COWLS, appellee.

*Appeal from Edwards.*

A Court of Chancery is vested with a broad and comprehensive jurisdiction over the persons and property of infants, and their parents, who are bound for their maintenance; and will take such action in relation to the charge of their persons or the management of their property, as circumstances may require.

In determining the fitness of the person to whom the custody of infants shall be given to act as guardian, the Court of Chancery is not bound down by any particular form of proceeding. It may either be referred to a Master to inquire and report as to who will be a fit person; or that may be inquired of in open Court, or the Court may determine from its own knowledge alone. No certain rule can be laid down for its government, in all cases, except that the best interests of the child must be consulted.

The Court of Chancery may remove all guardians, whether appointed by the Court itself, by the Court of Probate, by testament, or even by express Act of the Legislature, whenever it is satisfied that the guardian is abusing his trust, or the interests of the ward require it.

Where infants are taken from the custody of the father by a Court of Chancery, and have no property of their own, the father is bound for their support, and in determining what is sufficient for a bare maintenance, the Court will have regard to the ability of the father. Such ability may be determined by a reference to a Master, or by the Court itself directly by the examination of witnesses in open Court, or it may direct depositions to be taken.

BILL IN CHANCERY, for an increase of alimony, the custody of two infant children, and an allowance for their maintenance. The bill was filed in the Edwards Circuit Court by the appellee against the appellant, and heard before the Hon. William Wilson, at the September term 1845. A decree was

rendered, awarding the custody of the children to the complainant below, their mother, and an allowance of sixty dollars a year for five years. The defendant appealed to this Court.

*A. Lincoln,* for the appellant.

*A. T. Bledsoe,* for the appellee.

The Opinion of the Court was delivered by

CATON, J.    This bill was filed by Ann Cowls against her late husband for the purpose of obtaining the custody of their children, and a reasonable allowance for their support. In a former suit between the same parties, Mrs. Cowls had obtained a divorce from the present plaintiff, but in that decree no provision was made in relation to the children. There were two children living at the time the decree was entered, Mary Jane, aged six, and Thomas, aged four years. The reasons assigned in the bill why they should not longer be allowed to remain with their father, and which are not denied by him, but are admitted by his demurrer, are, that since the time when the divorce was granted, he had lived in a state of fornication with a woman, until within a few weeks of the time when this bill was filed, when he married her. That she was a woman of notoriously bad character, and not in any way qualified for the care and education of the children. That they are now left entirely under her care, and the influence of her bad example. That he neglects them and is addicted to excessive and frequent intoxication. That he is in the habit of quarreling with his present wife, in the presence of the children and driving her from the house. That he is in the habitual use of profane, indecent, immoral and vulgar language, as well in the presence of the children as elsewhere. For these reasons the Court decreed that the children should be taken from the father, and placed in the custody of the mother, and the Court also allowed for their support thirty dollars per annum each, for the period of five years, to be paid by the defendant.

The power of the Court of Chancery to interfere with and control, not only the estates but the persons and custody of all minors within the limits of its jurisdiction, is of very ancient origin, and cannot now be questioned. This is a power which must necessarily exist somewhere, in every well regulated society, and more especially in a republican government, where each man should be reared and educated under such influences that he may be qualified to exercise the rights of a freeman and take part in the government of the country. It is a duty, then, which the country owes as well to itself, as to the infant, to see that he is not abused, defrauded or neglected, and the infant has a right to this protection. While a father so conducts himself as not to violate this right, the Court will not, ordinarily, interfere with his parental control. If, however, by his neglect or his abuse, he shows himself devoid of that affection, which is supposed to qualify him better than any other to take charge of his own offspring, the Court may interfere, and take the infant under its own charge, and remove it from the control of the parent, and place it in the custody of a proper person, to act as guardian, who may be a stranger.

The powers and the duty of the Court, on this branch of the subject, are very satisfactorily laid down by Story. He says: "The jurisdiction of the Court of Chancery extends to the case of the person of the infant, so far as is necessary for his protection and education, and to the care of the property of the infant, for its due management and preservation, and proper application for his maintenance. It is upon the former ground principally, that is to say, for the due protection and education of the infant, that the Court interferes with the ordinary rights of parents, as guardians by nature or by nurture, in regard to the custody and care of their children. For although, in general, parents are intrusted with the custody of the persons and education of their children, yet this is done upon the natural presumption that the children will be properly taken care of, and will be well brought up, with a due education in literature, and morals, and religion, and that they will be treated with

kindness and affection. But whenever this presumption is removed; whenever (for example) it is found that a father is guilty of gross ill-treatment or cruelty towards his infant children; or that he is in constant habits of drunkenness, and blasphemy, or low and gross debauchery; or that he professes atheistical and irreligious principles; or that his domestic associations are such as to tend to the corruption and contamination of his children; or that he otherwise acts in a manner injurious to the morals or interests of his children; in every such case, the Court of Chancery will interfere, and deprive him of the custody of his children; and appoint a suitable person to act as guardian, and to take care of them, and superintend their education." 2 Story's Eq. Jur. § 1341.

Infants thus taken under the charge of the Court of Chancery for the protection of their persons or property, are called wards of the Court, and the guardian, or person appointed by the Court to act as guardian, is an officer of the Court and is entirely under its direction and control, and entitled to its aid in enforcing a proper obedience and submission on the part of the ward, and to prevent the improper interference of third persons. A jurisdiction thus extensive, and liable as we have seen, to enter into the domestic relations of every family in the community, is necessarily of a very delicate, and often of a very embarrassing nature; and yet its exercise is indispensable in every well governed society. It is indispensably necessary to protect the persons and preserve the property of those who are unable to protect and take care of themselves.

It becomes clear, then, that our Legislature, by providing that "when a divorce shall be decreed, it shall and may be lawful for the Court to make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable and just," has conferred no new authority or jurisdiction upon the Court. It was by its original jurisdiction clothed with the same powers before. The cases provided for in this

statute are necessarily embraced in that broad and comprehensive jurisdiction with which the Court of Chancery is vested, over the persons and estates of infants and their parents who are bound for their maintenance. To apply these principles to the case before us. What are its circumstances? After a divorce had been decreed between the parties, without making any provision as to the care, custody, or maintenance of the children, the mother files a bill, and asks that the custody of the children shall be taken from the father for the reasons, that he has for sometime been living with a prostitute, whom he has finally married, and that the children, who are of a tender age, are left principally under her control, and pernicious example and influence; that he is very intemperate in his habits, and profane, and is in the habit of using vulgar and obscene language in the presence of his family and these children. Here we have grouped together into one disgusting and revolting picture, those features of a father's character who has become unworthy of the charge of his own offspring, and any one of which, as we have seen it laid down by Mr. Justice Story, will authorize the Court in its discretion, to interfere and remove the child without the influence of such a polluted atmosphere. Under such circumstances, if these children are allowed to remain with their father, it is impossible to expect that they will be properly reared and educated. It would be too much to hope that they will not be affected and polluted by the pernicious examples constantly before them. We cannot doubt but a due regard for the well being of these children requires the Court to take them under its own care and control.

And now the question arises, whether the Court acted judiciously in giving the custody of these children to their mother. In determining the fitness of the person to whom the custody of these children shall be given, to act as guardian, the Court is not bound down by any particular form of proceeding. It may be either referred to a Master to inquire and report as to who will be a fit person; or that may be in-

quired of in open Court; or the Court may determine from its own knowledge alone. At the time, or after a divorce is decreed, when the Court finds itself called upon to remove the children, or a part of them from the custody of the father, it will of course, if the mother be unobjectionable, place them in her charge, as it may well be expected that she will feel more solicitous for their welfare than a stranger. Indeed, it may often happen in such case, when no serious objection can be urged against the father, that it would be advisable to give to the mother the care of a portion at least of the children, especially if they be daughters of very tender years. In all such cases, the Court should take into consideration all of the circumstances of each particular case, and dispose of the children in such manner as may appear best calculated to secure for them proper care and attention as well as a virtuous education.

We have been referred by the plaintiff's counsel to a case where the Court determined that the mother should retain the custody of the children, although she had been living with, and subsequently to a divorce, had married another man. There the Court say: "The present case is attended with peculiar and unfortunate circumstances. We cannot avoid our disapprobation of the mother's conduct, although so far as regards her treatment of the children, she is in no fault. They appear to have been well taken care of in all respects. It is to them that our anxiety is principally directed, and it appears to us, that considering their tender age, they stand in need of that kind assistance which can be afforded by none so well as a mother. It is on their account, therefore, that, exercising the discretion with which the law has invested us, we think it best at present not to take them from her."

It is unnecessary for us to say whether or not we agree with that Court in the propriety of its determination, yet the case serves to show that no certain rule can be laid down for the government of the Court in all cases, except that the best interests of the child must be consulted. It was truly

remarked at the bar, that it is not the rights of the mother that we are to enforce, although she files the bill, but it is the interests of the infants that are to be protected.

It was urged against the fitness of the mother to have the care of these children, that she had shown a want of maternal affection and solicitude for their welfare, in not having applied to have them removed from their father's control at the time the divorce was allowed. We think that it is attaching too much importance to that circumstance, which may be satisfactorily accounted for in other ways. We do not think it proves, as was supposed, that she is more anxious to obtain the money that may be awarded for their maintenance, than to secure the welfare of the children. She may not have been, and probably was not aware at the time, that the Court would, under any circumstances, take the children from the father. But admitting that there are some suspicions that the mother was not a judicious selection to have the care of these children, it does not necessarily follow that the decree should be reversed. The Court below, may, at any time, on the application of the father, or any other person, on behalf of the infants, or even of its own motion, remove the mother from this trust and appoint some other person. The Court of Chancery may remove all guardians, whether appointed by itself, by the Court of Probate, by testament, or even by express Act of the Legislature, whenever it is satisfied that the guardian is abusing his trust, or the interests of the ward require it. *Duke of Beaufort* v. *Berty,* 1 Peere Williams, 703; 2 Story's Equity Jurisprudence, § 1339.

We might, undoubtedly, if we were satisfied that an improper person had been appointed to act as guardian, reverse so much of the decree as makes that appointment, and either appoint a proper person, here, or remand the cause to the Court below, with directions to that Court to appoint some other person who is fit. The reversal of that part of the decree which makes the appointment would not necessarily restore the children to the custody of the father; nor does the affirmance of this decree deprive the Court below of the juris-

Cowls *v.* Cowls.

diction to remove the mother from the trust, and appoint another in her place, whenever it shall be made to appear to that Court that the interests of the wards require it.

We do not think the amount allowed for the maintenance of the children too much. In a case like the present, where the infants have no property of their own, the father is bound for their support; but then he is only bound for a bare maintenance. In determining what is sufficient for a bare maintenance, the Court may and should have some regard for the ability of the father. All of these questions may be determined by a reference to a Master, or by the Court itself directly, by the examination of witnesses in open Court, or it may direct depositions to be taken. Some complaint is made that the Court did not give the defendant below time to take depositions, but we think without good reason. As to the direct question in the case, that is, the unfitness of the father to have the care of the children, he had no right to controvert the case made by the bill without having answered. As to the collateral *question*, as to the fitness of the mother, or the amount to be allowed for maintenance, the Court would have heard any proofs which he chose to produce; but it should not have continued the cause for the purpose of taking depositions without the most satisfactory reason being shown by affidavits. In this case, the Court examined witnesses, and made its own determination, and with that we are well satisfied for the present. It does not appear to us that thirty dollars a year is too mnch for the support of each of these children. It must be remembered that this allowance is still within the the control of the Court below, and may be there, at any time, either increased or diminished, extended or limited, as subsequent circumstances may require.

The decree is affirmed, with costs.

*Decree affirmed.*