RICHARD ECKISS *et al.*, Guardians of Kathy McVaigh, a Minor, Petitioners-Appellees, v. DUTCH McVAIGH *et al.*, Respondents-Appellants.

Fifth District    No. 5—92—0620

Opinion filed May 19, 1994.

J.C. Shumaker, of Olney, for appellants.

Larry Dunn, State's Attorney, of Olney (Norbert J. Goetten, Stephen E. Norris, and Rebecca Sanders, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellees.

JUSTICE MAAG delivered the opinion of the court:

Respondents, Eugene "Dutch" and Karon McVaigh, appeal from an order entered by the circuit court of Richland County on February 7, 1991, ordering them to pay support to the respondents, Richard and Lois Eckiss, the guardians of the McVaigh's minor child, Kathy McVaigh. For the reasons that follow, we affirm the decision of the trial court.

On August 31, 1989, Kathy McVaigh was removed from her parents' home by the Illinois Department of Children and Family Services (DCFS). In the circuit court of Richland County, DCFS was granted temporary guardianship of Kathy pursuant to the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1992)). Kathy's removal from the McVaigh home was premised upon her parents' alleged failure to provide Kathy with a safe environment and to protect her from abuse. The record is unclear, but apparently a young unrelated man who also resided in the McVaigh home was believed to have abused Kathy in some fashion. The McVaighs apparently did not believe that the abuse occurred. At a subsequent criminal trial, Kathy testified for the State and her mother, Karon, testified for the accused.

After removing Kathy from her parents' home, DCFS placed her with the petitioners, Richard and Lois Eckiss. Lois Eckiss is Kathy's maternal aunt. The juvenile case regarding Kathy was terminated on February 2, 1990, when the petition for neglect was withdrawn. On the same date, custody of Kathy was established under the Probate Act, and pursuant to that act Kathy nominated as her guardians Richard and Lois Eckiss. Kathy's parents, Dutch and Karon McVaigh, entered their appearance in the probate court, were represented by counsel, and waived service of summons.

There is a dispute regarding the McVaighs' alleged consent to the establishment of the guardianship. Karon McVaigh testified at the support hearing that it was understood that if she and Dutch consented to the guardianship DCFS involvement would cease. Prior to February 2, 1990, when DCFS had temporary guardianship, the McVaighs paid support for Kathy. After February 2, 1990, the McVaighs did not make any payments to the Eckisses as guardians.

The first petition for support was filed on July 25, 1990, and was brought by the People of the State of Illinois on behalf of Richard and Lois Eckiss as guardians for Kathy McVaigh. This petition alleged that the minor, Kathy McVaigh, was a person entitled to support under the Juvenile Court Act of 1987 (Juvenile Court Act) (Ill. Rev. Stat. 1989, ch. 37, par. 801—1 *et seq.*), and the petition sought an order from the circuit court for support under section 6—9

of that Act. On August 10, 1990, the McVaighs filed a motion to dismiss, which alleged that the action could not be brought under the Juvenile Court Act and that the State was not a proper party to bring such an action. Although the circuit court found that the McVaighs owed a duty of support to Kathy, it also found that the action could not be brought by the State. On August 17, 1990, the circuit court dismissed the first petition for support. Leave was granted to refile the action with the guardians being the named petitioners.

On September 7, 1990, the Eckisses filed an amended petition for support through the State's Attorney's office. On September 26, 1990, the McVaighs filed a motion to dismiss the amended petition. They alleged in the motion to dismiss that the amended petition was improperly based upon the Juvenile Court Act, which by its own terms did not apply, that the State's Attorney's office should not be involved because the guardianship of the minor is a private legal matter pursuant to the Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110$^1$/2, par. 1—1 *et seq.*), and that the amended petition was simply a refiling of the first petition for support, which had been properly dismissed.

On October 3, 1990, the circuit court denied the McVaighs' motion to dismiss the amended petition for support, finding that the Eckisses had a valid cause of action. The circuit court did strike all language in the amended petition referring to the Juvenile Court Act. The court took judicial notice of the facts alleged in the amended petition, that a guardianship had been established for Kathy McVaigh, and that no order for support had been entered.

On October 22, 1990, the McVaighs filed an answer to the amended petition for support and admitted that they are the parents of the minor, Kathy McVaigh, but they denied that they were legally obligated to support her. The McVaighs also filed an affirmative defense alleging that the Eckisses had assumed the rights and obligations of the legal guardianship of the minor, Kathy McVaigh, and among the rights and obligations arising pursuant to guardianship are the custody of the person of the minor and the obligation to support her.

A motion to strike the affirmative defense was filed by the State's Attorney on October 26, 1990, alleging that the affirmative defense filed by the McVaighs did not constitute a recognizable defense at law. The motion to strike was withdrawn on December 6, 1990. Hearings on the case were held on December 6, 1990, and January 2, 1991. The trial court heard testimony concerning the needs of the minor, the income and obligations of the McVaighs, and the minor's

chores and work performed in the Eckiss home and on the Eckiss farm. The McVaighs and the Eckisses were present and represented by counsel at all times.

On January 17, 1991, the trial court entered a memorandum of decision. The trial court ordered the McVaighs to pay $60 per week to the Eckisses for Kathy's support and made the support payments retroactive to the date of the original petition for support filed on July 25, 1990. An order of withholding was also entered.

The trial court reasoned that parents are the natural guardians of their minor children and there are several statutes in Illinois which make parents liable for the support of their minor children, including the family expense law (750 ILCS 65/15 (West 1992)), the Illinois Parentage Act of 1984 (750 ILCS 45/1.1 *et seq.* (West 1992)), and the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 1992)). Under these statutes, the obligation of parents to support their minor children is not dependent upon custody. The obligation continues until the minor child reaches majority at the age of 18 or is emancipated. The trial court found that Kathy McVaigh was not emancipated and was in need of support.

The trial court also found that the McVaighs had followed a course of conduct which caused the change of custody, and although they did not agree to the change, they knowingly and voluntarily acquiesced in the change of custody. The court ruled that regardless of who has custody of Kathy, so long as she is a minor, the McVaighs as her parents have an obligation to support her.

On March 8, 1991, the McVaighs filed a post-trial motion asking the court to set aside and vacate its order of February 7, 1991. In the post-trial motion, the McVaighs allege that the order to pay support is contrary to the law and the evidence in this case. Alternatively, the McVaighs alleged that the court erred in determining the proper amount of support. They urged the court to take judicial notice of the minimum wage law, although admitting in their pleading that the minimum wage law is not binding upon the court. The McVaighs claimed that if support was due, it should be reduced to reflect the value of the chores performed by Kathy.

On July 22, 1992, the McVaighs filed a motion to terminate the order for withholding, alleging that the minor child, Kathy McVaigh, attained her majority on July 16, 1992. Thereafter, on August 13, 1992, the McVaigh post-trial motion was heard. A memorandum of decision was entered on August 20, 1992. The trial court denied the post-trial motion in its entirety. On September 15, 1992, the McVaighs filed a notice of appeal, and the instant appeal ensued.

On appeal the McVaighs raise a number of issues including:

(1) Whether the guardians of the person of a minor have a right to sue the natural parents of their ward for reimbursement for their expenditures for their ward;

(2) Whether the trial court erred in denying the McVaighs' motion to dismiss the amended petition for support, as further amended by the court;

(3) Whether the trial court erred in denying the McVaighs' motion to dismiss the State's Attorney from the case;

(4) Whether the evidence supported the judgment of the court;

(5) Whether the trial court erred in entering an order for withholding; and

(6) Whether the trial court erred in entering an order for withholding spontaneously and without notice.

The McVaighs argue that the court erred in denying their motion to dismiss the amended petition for support, since neither party was able to cite an Illinois Appellate or Supreme Court decision where the guardians of a minor brought suit against a natural parent of the minor ward for a contribution to the guardians' expense in the nurture of the ward. The McVaighs cite a number of cases from other jurisdictions in support of their argument that there is "no common law or statutory precedence for a guardian's suit to establish a program of payments for support of his ward from the parents."

■ When ancient legal principles of law such as guardianship are involved, our supreme court has usually addressed a large number of issues arising under the principle. Our research reveals that there are Illinois Supreme Court cases which address the very issue before us. After researching current cases and statutes, instead of concluding that there is no relevant Illinois statute or case on point, a lawyer should not terminate working and simply rely upon cases from other jurisdictions. Rather, a lawyer must put aside the modern law books, turn off the computer, and dust off the old law books from the last century.

Our supreme court has instructed us:

"If the questions involved in a case are of sufficient importance to justify asking this court to decide them, they are worthy of the careful consideration of counsel presenting them. If the case is not properly presented and the court is not given the benefit of precedents there is danger of a decision being rendered that will not be in harmony with the weight of authority. It is the duty of attorneys practicing in this court to present to the court the authorities supporting their views and to assist the court in reaching a correct conclusion." *Kelley v. Kelley* (1925), 317 Ill. 104, 107, 147 N.E. 659.

In our research, we discovered the case of *Cowles v. Cowles* (1846),

8 Ill. (3 Gilm.) 435. Of historical interest, we note that our sixteenth President, Abraham Lincoln, represented the unsuccessful litigant in *Cowles.*

In *Cowles,* our supreme court stated:

"The power of the court of Chancery to interfere with and control[ ] not only the estates but the persons and custody of all minors within the limits of its jurisdiction[ ] is of very ancient origin, and cannot now be questioned. This is a power which must necessarily exist somewhere, in every well regulated society, and more especially in a republican government, where each man should be reared and educated under such influences that he may be qualified to exercise the rights of a freeman and take part in the government of the country. It is a duty, then, which the country owes as well to itself, as to the infant, to see that he is not abused, defrauded or neglected, and the infant has a right to this protection. While a father so conducts himself as not to violate this right, the court will not ordinarily interfere with his parental control. If, however, by his neglect or his abuse, he shows himself devoid of that affection, which is supposed to qualify him better than any other to take charge of his own offspring, *the court may interfere, and take the infant under its own charge, and remove it from the contro[l] of the parent, and place it in the custody of a proper person to act as guardian, who may be a stranger.*" (Emphasis added.) *Cowles,* 8 Ill. (3 Gilm.) at 437.

The supreme court went on to address the issue of support of the children placed with a guardian stating, "It becomes clear, then, that our Legislature, by providing that 'when a divorce shall be decreed, it shall and may be lawful for the court to make such order touching the alimony and maintenance of the wife, the care, custody and support of the children, or any of them, as from the circumstances of the parties and the nature of the case shall be fit, reasonable, and just,' *has conferred no new authority or jurisdiction upon the court. It was by its original jurisdiction clothed with the same powers before.*" (Emphasis added.) *Cowles,* 8 Ill. (3 Gilm.) at 438.

In other words, the circuit courts under the common law, prior to support provisions in the earliest Illinois divorce statutes, had the power to order support to be paid by the father for the care, custody, and support of his children.

At first glance it might appear that *Cowles* is a simple divorce case where the mother was granted custody of and support for the minor children of the parties. However, the *Cowles* case must be viewed in the period of time in which it was decided. Prior to the turn of this century, divorce was not common, and a father, under the common law, had the paramount right to his minor children. The

father has the first right to the guardianship of his children and to their custody, care, control, and raising. This right is incident to and arises out of his duty to maintain them and, consequently, to instruct them, and his right to their services. (*Miner v. Miner* (1849), 11 Ill. 43, 45.) The father has the first right to guardianship, by nature; the mother the second. *Miner*, 11 Ill. at 45.

In *Cowles*, the mother of minor children sought their custody, guardianship, and support from the father of the children. Previously the mother had obtained a divorce from the father, and pursuant to the common law, the father retained custody and the natural guardianship of the children. In the subsequent case, the trial court ordered that the children be taken from their father, finding the father to have neglected his children. Guardianship of the children was granted to the mother. The court ordered the father to pay $30 per year to the guardian, the mother, for each child, for a period of five years, for support of the children.

An illustration of the application of this concept of the father's paramount right as natural parent can be found in *Pierce v. Millay* (1871), 62 Ill. 133. In *Pierce*, the supreme court affirmed the striking of an affirmative defense in reliance on the father's paramount right to guardianship under the common law. *Pierce* was a personal injury action wherein it was alleged, under a theory of trespass, that the defendant caused an injury to the plaintiff's child. It was alleged that the injury occurred when the defendant placed plaintiff's child in her buggy and drove off with the child. The horse "took fright" and ran away, resulting in the child being thrown from the buggy. As an affirmative defense, the defendant alleged that the child's mother had given permission to the defendant to take the child in the buggy. The supreme court held that merely alleging the mother's permission was defective as "[a] mother, as such, is entitled to no disposing power over the person of the child," the father being the person entitled by law to the custody of his child. *Pierce*, 62 Ill. at 134.

In this century, the distinction between mothers and fathers over the duty to support minor children has been altered. "It is true that at common law the legal status of the mother was such that she was not under legal obligations to support her minor children where the father was alive and able to do so. The common law rule has been modified by a number of statutory provisions. *** Furthermore, the principal reason for the common law rule no longer exists. Under the common law all of the earnings and property of the wife belonged to the husband. Therefore it was only natural and proper that he should be the one primarily responsible for the support of the children, which has always been regarded as a natural obligation of both

parents. \*\*\* However, since the wife has become emancipated and now possesses the full enjoyment of her property and earnings, there is no longer any reason why she should not be held legally responsible for the support of her minor children equally with her husband." *Purity Baking Co. v. Industrial Comm'n* (1929), 334 Ill. 586, 587-88, 166 N.E. 33, 34.

The statutes cited by the trial court, the family expense law (750 ILCS 65/15 (West 1992)), the Illinois Parentage Act of 1984 (750 ILCS 45/1.1 *et seq.* (West 1992)), and the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/101 *et seq.* (West 1992)), all rely on the common law duty of parents to support their children. It has not been argued that there is an Illinois statute that relieves parents of their common law duty to support their children, and we are not aware of any. Contrary to their assertions, clearly the McVaighs, as Kathy's parents, have a common law duty to support her, and this includes the payment of support to her court-appointed guardians, the Eckisses.

Alternatively, the McVaighs allege that the Eckisses voluntarily assumed the duty to maintain Kathy, thereby extinguishing their duty to support. In support of this argument the McVaighs again cite cases from other jurisdictions. Our research reveals that our supreme court addressed the issue of a guardian's voluntary assumption of the duty to support in *Bond v. Lockwood* (1864), 33 Ill. 212.

Of historical and legal interest, in *Bond*, the Illinois Guardian and Ward Act of 1845 (Rev. Stat. 1845, ch. 47, at 266), the predecessor to our present guardianship provisions, as contained in the Probate Act of 1975, is discussed. The court found that the provisions of the Guardian and Ward Act of 1845 were not designed as a "complete code" but were enacted to confer upon the county court power to appoint guardians and to regulate their conduct in accordance with their duties at common law. Some imperfections in the common law were remedied, and a more simple and convenient mode of procedure introduced. In other respects, the common law regulating the powers and duties, rights, and liabilities of guardians was left in force. *Bond*, 33 Ill. at 218.

In *Bond*, the supreme court held that a stepfather is not required by law to board the children of his wife by a former marriage without compensation, nor is his wife obliged so to do. He may receive them into his family under such circumstances as to create a presumption that he was to board and clothe them gratuitously, but where a stepfather receives children into his family as their legally appointed guardian and, as such, renders his accounts for expenditures from year to year, and such accounts are allowed by the county court, the presumption does not arise. *Bond*, 33 Ill. at 224.

■ Likewise, in the instant case, we see no reason why the presumption should arise that the Eckisses voluntarily assumed the duty to support Kathy. There is no dispute that the Eckisses were under no duty at common law or by statute to take the child into their home or support her. They received support for Kathy from the McVaighs while DCFS had temporary guardianship, and they sought support when the McVaighs subsequently refused to continue to support Kathy after DCFS's involvement ended. Accordingly, we find that the Eckisses did not voluntarily assume the support of their ward, Kathy McVaigh.

■ Lastly, we find that the McVaighs have waived the remaining issues raised on appeal. The McVaighs allege, without a single citation to legal authority in the argument portion of their brief or in the points and authorities section, that the trial court erred in setting the amount of child support and in issuing an order for withholding. The McVaighs also allege without citation to legal authority that the trial court erred in denying their motion to exclude the State's Attorney from the case. These portions of the McVaigh brief contain mere contentions unsupported by legal authority and argument and are, therefore, in violation of Supreme Court Rule 341(e)(7)(134 Ill. 2d R. 341(e)(7)).

It is well established that a court of review is entitled to have briefs submitted that are articulate and organized and that present cohesive legal argument in conformity with our supreme court rules. (*Schwartz v. Great Central Insurance Co.* (1989), 188 Ill. App. 3d 264, 268, 544 N.E.2d 131, 133.) A reviewing court is also entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived. (*Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.* (1987), 118 Ill. 2d 389, 401, 515 N.E.2d 1222, 1227.) Mere contentions without argument or citation of authority do not merit consideration on appeal (*Fuller v. Justice* (1983), 117 Ill. App. 3d 933, 942, 453 N.E.2d 1133, 1139), nor do statements unsupported by argument or citation of relevant authority. (*Hutchings v. Bauer* (1991), 212 Ill. App. 3d 172, 183, 571 N.E.2d 169, 176, *rev'd on other grounds* (1992), 149 Ill. 2d 568, 599 N.E.2d 934.) Contentions supported by some argument but absolutely no authority do not meet the requirements of Supreme Court Rule 341(e)(7). *In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 684-85, 509 N.E.2d 707, 716.

Appropriate here is our statement in *In re Estate of Kunz* (1972), 7 Ill. App. 3d 760, 763, 288 N.E.2d 520, 523:

"Reviewing courts are entitled to have the issues clearly defined [and] to be cited pertinent authorities and are not a depository in

which an appellant is to dump the entire matter of pleadings, court action, argument and research as it were, upon the court." For the foregoing reasons, the Richland County circuit court order of February 7, 1991, is affirmed.

Affirmed.

CHAPMAN and WELCH, JJ., concur.