2016 IL App (2d) 150504
No. 2-15-0504
Opinion filed June 30, 2016

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* NORA L. NIETO, | ) ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 14-FA-230 |
| ALFREDO R. AREVALO, | ) ) | Honorable Christopher M. Harmon, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justice McLaren concurred in the judgment and opinion.
Presiding Justice Schostok dissented, with opinion.

**OPINION**

¶ 1    Petitioner, the Illinois Department of Healthcare and Family Services (Department), filed

a petition in the circuit court of McHenry County to establish a support order pursuant to the

Uniform Interstate Family Support Act (UIFSA) (750 ILCS 22/100 *et seq.* (West 2014)).    The

trial court dismissed the action for lack of jurisdiction and the Department appeals.    We affirm.

¶ 2                                I. BACKGROUND

¶ 3    On August 18, 2014, the Department filed a "uniform support petition" on behalf of Nora

L. Nieto, a resident of Mexico, alleging that respondent, Alfredo R. Arevalo, a resident of

Crystal Lake, Illinois, owed support for their two minor children, Navid and Jukari, also residents of Mexico.

¶ 4 The form petition, titled "Uniform Support Petition," and the appended documents are in Spanish with English translations. Documentation accompanying the petition shows that Nora and respondent were married in Mexico on October 3, 1996. The children's birth certificates are included in the documentation and indicate that respondent is Navid and Jukari's father. In addition, Nora furnished an "affidavit in support of paternity." The petition also alleged that there was no existing support order in place and that respondent had not paid any support.

¶ 5 Respondent was personally served with process on August 28, 2014, and he filed an appearance on October 3, 2014. Pursuant to court order, respondent filed a financial affidavit prescribed by local rule. In the affidavit, he listed Navid and Jukari as his children with Nora.

¶ 6 On January 14, 2015, respondent filed a "two-count" motion to dismiss. "Count I" was brought pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)) and attacked the petition on three grounds: (1) the petition failed to specify the statutory section upon which it was based, in violation of a local rule; (2) Nora's financial affidavit was outdated, in violation of a local rule; and (3) no petition for dissolution of marriage was pending and, therefore, under section 505(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505(a) (West 2014)), no child support could be set. "Count II" was brought pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2014)) and alleged the identical grounds for dismissal that were alleged in "count I."

¶ 7 In its response to the motion, the Department argued: respondent was the noncustodial parent and owed child support; the form petition used was prescribed by statute and federal regulations and specified the relief sought; Nora would shortly be filing an updated financial

affidavit; and the Marriage Act was irrelevant, as the UIFSA did not require that a dissolution action be pending or that the parties be divorced.

¶ 8    In reply, respondent contended that there was no Mexican court order to be enforced in Illinois; the UIFSA was not the sole remedy; and the Illinois Public Aid Code (305 ILCS 5/10-1 (West 2014)) governed the issue of whether Nora could receive "child support services" from the State of Illinois.    Respondent admitted the allegation that he is the children's presumed father.

¶ 9    On March 6, 2015, the Department filed Nora's updated financial affidavit in compliance with the local rule.    Nora also alleged that respondent was currently living with a woman in Crystal Lake, with whom he had two sons.

¶ 10   At a hearing on respondent's motion to dismiss on March 6, 2015, the court *sua sponte* ordered the parties to comment on "whether entering a child support order in this case would result in a *de facto* custody order pursuant to 750 ILCS 45/14(a)(2)[1] and whether this court would have jurisdiction [under the UIFSA[2]] to enter such an order."   The court's order was premised on its belief that any support order would have to be entered pursuant to section 14(a)(2) of the Parentage Act (750 ILCS 45/14(a)(2) (West 2014)).   Only the Department filed a memorandum in accordance with the court's order, in which it argued that the UIFSA allows a

---

[1] This statutory reference is to section 14(a)(2) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/14(a)(2) (West 2014)), which provided that, if a judgment of parentage contains no explicit award of custody, the establishment of a support obligation in one parent shall be considered a judgment granting custody to the other parent.

[2] Section 104(b)(2) of the UIFSA (750 ILCS 22/104(b)(2) (West 2014)) provided that the court lacks "jurisdiction" to render a judgment relating to child custody.   As we discuss later in this opinion, the reference is to subject matter jurisdiction.   *Infra* ¶ 21.

court to enter a support order when no previous order has been entered and that such an order does not result in a custody determination.

¶ 11 The court conducted a second hearing on April 10, 2015. Respondent argued that a support order would require a custody determination, which was beyond the court's jurisdiction. The Department argued the points it raised in its written memorandum. In its ruling, the court observed that the Department was seeking an initial order of support on behalf of a resident of Mexico. The court opined that it would have to make a paternity determination as a prerequisite to ordering support. The court further opined that the presumption of paternity arising from the fact that Nora and respondent were married when the children were born was "only a presumption" and that the court "would still be required to determine paternity" before it could award Nora support. In the court's view, a support order would result in a *de facto* custody determination, which, according to the UIFSA, the court had no jurisdiction to make. Consequently, the court dismissed the petition. The Department filed a timely appeal.

¶ 12                                    II. ANALYSIS

¶ 13 The Department contends that the trial court's only obligation was to review the financial information and set child support using the appropriate Illinois guidelines. The Department argues that the court erred in *sua sponte* exploring issues of paternity and custody that were not in dispute. Respondent contends that the court correctly relied on the Parentage Act in dismissing the petition. These issues involve the interpretation of the UIFSA, and our review is *de novo*. See *Collins v. Department of Health & Family Services ex rel. Paczek*, 2014 IL App (2d) 130536, ¶ 15 (statutory interpretation is reviewed *de novo*).

¶ 14 While this appeal was pending, the legislature revised the UIFSA (Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/100 *et seq.* (West 2014)), the Marriage Act (Pub. Act

99-90 (eff. Jan. 1, 2016) (amending 750 ILCS 5/101 *et seq.* (West 2014)), and the Illinois Parentage Act of 2015 (Pub. Act 99-85 (eff. Jan. 1, 2016) (adding 750 ILCS 46/101 *et seq.*). We must decide this case under the law as it now exists, unless the present law affects the parties' vested rights. *McGinley v. Madigan*, 366 Ill. App. 3d 974, 981 (2006). Nevertheless, these changes have not affected the issues advanced in this appeal. If there is no retroactive impact, the amended law may be applied. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 38 (2001).

¶ 15 The primary objective of statutory construction is to give effect to the intent of the legislature. *Collins*, 2014 IL App (2d) 130536, ¶ 15. The plain language of the statute is the best indicator of the legislature's intent. *In re Christopher K.*, 217 Ill. 2d 348, 364 (2005). The court will examine the statute as a whole, considering all of its relevant parts. *Christopher K.*, 217 Ill. 2d at 364. Where the statute's language is clear and unambiguous, we do not resort to extrinsic construction aids. *Christopher K.*, 217 Ill. 2d at 364.

¶ 16 The purpose of the UIFSA is to unify state laws governing the establishment, enforcement, and modification of support orders. *Gowdey v. Gowdey*, 825 So. 2d 67, 69 (Miss. Ct. App. 2002). Section 401(a)(1) of the UIFSA provides that an Illinois court with personal jurisdiction over the parties may issue a support order when the individual seeking the order resides "outside this State." Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/401(a)(1) (West 2014)). "Outside this State" means "a location in another state or a country other than the United States." Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/102(18) (West 2014)). Section 401(c) provides that the court shall issue a support order after finding that the obligor owes a duty of support. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/401(c) (West 2014)).

¶ 17    An individual "petitioner" may initiate a proceeding under the UIFSA by filing a petition in a tribunal that has or can obtain personal jurisdiction over the respondent.    Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/301(b) (West 2014)).    The forum court, known as the "responding tribunal" (Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/102 (West 2014)), to the extent not prohibited by other law, may establish a support order.    Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/305(b)(1) (West 2014)).    In determining whether a duty of support exists, the forum court shall apply the procedural and substantive law of the forum state.    750 ILCS 22/303(1) (West 2014).[3]    The UIFSA does not grant the court authority to render a judgment relating to child custody.    Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/104(b)(2) (West 2014)).

¶ 18    Section 303(1) of the UIFSA provides that the court "shall" apply the procedural and substantive law "generally applicable to similar proceedings originating in this State and may exercise all powers and provide all remedies available in those proceedings."    750 ILCS 22/303(1) (West 2014).    Section 303(2) requires the court to "determine the duty of support and the amount payable in accordance with the law and support guidelines of this State."    750 ILCS 22/303(2) (West 2014).    Section 305(b)(1) provides that the court, "to the extent not prohibited by other law," may, *inter alia*, establish a support order.    Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/305(b)(1) (West 2014)).

¶ 19    At oral argument, we asked the parties to expound on the meaning of section 303 of the UIFSA.    The Department responded that it was unprepared to do so but that it would be willing to address the question in supplemental briefing.    Consequently, we ordered supplemental briefing.    The Department now contends that section 303 was not addressed by the trial court

---

[3] The 2015 revision did not amend section 303.

and that we cannot address it *sua sponte*.   We find this response remarkable.   The trial court perforce applied section 303 when it looked to Illinois's substantive law for a duty of support. Furthermore, respondent's motion to dismiss challenged the applicability of the UIFSA.   The Department should not be surprised that the construction of the UIFSA is at the heart of this appeal.

¶ 20    Next, the Department asserts that we need address only whether the court had jurisdiction.   Presumably, because the court dismissed Nora's petition for lack of "jurisdiction," the Department believes that this is the sole issue in this appeal.   To the contrary, it is but a threshold issue on which we clarify that the court had subject matter and personal jurisdiction.

¶ 21    The trial court determined that it lacked jurisdiction, because section 104(b)(2) of the UIFSA states that the court is without "jurisdiction" to render a judgment relating to child custody.   Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/104(b)(2) (West 2014)). As used in section 104(b)(2), "jurisdiction" means subject matter jurisdiction.   Subject matter jurisdiction is conferred entirely by the Illinois Constitution, and it refers to the power of a court to hear and decide cases of the general class to which the proceeding at issue belongs. *McCormick v. Robertson*, 2015 IL 118230, ¶ 19.   There is no question that circuit courts of this state have the power to hear and determine issues pertaining to the UIFSA.    Thus, the trial court in the present case possessed subject matter jurisdiction.   There also is no question that respondent was served with process and filed an appearance, conferring personal jurisdiction on the court.

¶ 22    What the trial court lacks under the UIFSA is *authority* to decide issues relating to child custody.   See *In re Marriage of Edelman*, 2015 IL App (2d) 140847, ¶ 17 (discussing the difference between subject matter jurisdiction and authority to act under the UIFSA).

¶ 23    Having determined that the trial court had jurisdiction, we turn to the issue of whether the court correctly ruled that a duty of support must be found in Illinois's substantive and procedural law.    In our view, because the UIFSA does not affect substantive rights, the trial court properly looked to Illinois statutory law to determine whether respondent owes a duty of support. *Department of Human Services v. Shelnut*, 772 So. 2d 1041, 1050 (Miss. 2000).    Contrary to the Department's position, the UIFSA does not itself create a duty of support.    *Gowdey*, 825 So. 2d at 68.[4]

¶ 24    A fundamental principle of statutory construction is to view all provisions of a statute as a whole, interpreting words and phrases in light of other relevant statutory provisions. *Edelman*, 2015 IL App (2d) 140847, ¶ 13.    In violation of this principle, the Department asks us to apply section 401(a)(1) of the UIFSA in isolation.    Section 401(a)(1) provides that a court of this state "may" issue a support order if the individual seeking the order resides outside this state. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/401(a)(1) (West 2014)).    The Department ignores subsection (c) of section 401, which provides that the court shall issue a support order *only after* it finds that an obligor owes a duty of support.    Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/401(c) (West 2014)).    We thus must look to section 303 for instruction on how to determine whether a duty of support exists.    Section 303 provides that courts determine whether a duty of support exists by applying the substantive and procedural law of the forum state.    750 ILCS 22/303 (West 2014).

¶ 25    The Department suggests that parents' common-law duty to support their children furnishes the duty of support under the UIFSA.    Under the common law and prior to support

_____

[4] This court has not found an Illinois case on point.    Consequently, we look to other states' decisions for guidance.

provisions in the earliest divorce statutes, circuit courts had the power to order the father to pay child support. *Eckiss v. McVaigh*, 261 Ill. App. 3d 778, 783 (1994). Women, postemancipation, were also held legally responsible for the support of their children, equally with their husbands. *Eckiss*, 261 Ill. App. 3d at 784. In *Eckiss*, the court held that the parents of a child who had been removed from their custody owed a common-law duty to support the child, including the payment of support to the child's court-appointed guardians. *Eckiss*, 261 Ill. App. 3d at 785. The court observed that no Illinois statute relieves parents of their common-law duty to support their children. *Eckiss*, 261 Ill. App. 3d at 785.

¶ 26 While there may be no statute that affirmatively states that the common-law duty of support has been abolished, our legislature has abolished common-law marriage. 750 ILCS 5/214 (West 2014). With the abolition of common-law marriage, it follows that the legislature intended marriage and ancillary issues, such as child support, to be wholly regulated by statute. Indeed, where our supreme court has extended a common-law duty of support in the absence of statutory authority, it has done so with extreme circumspection.

¶ 27 In *In re Parentage of M.J.*, 203 Ill. 2d 526, 541 (2003), our supreme court held that the Illinois Parentage Act (750 ILCS 40/1 *et seq.* (West 1998)), specifically governing artificial insemination, does not preclude child-support claims based on common-law theories of oral contract and promissory estoppel in artificial-insemination cases. The court emphasized that its holding was "limited to the unique circumstances" of that case. *M.J.*, 203 Ill. 2d at 542; see also *In re Marriage of Simmons*, 355 Ill. App. 3d 942, 952 (2005) (*M.J.* held that action for support in artificial-insemination cases can be brought under common-law theories of breach of contract and promissory estoppel). The court in *In re T.P.S.*, 2012 IL App (5th) 120176, ¶ 49, also recognized that the holding in *M.J.* was limited to artificial-insemination cases. Therefore,

the Department's assertion that *M.J.* and *Simmons* stand for the proposition that there is a blanket common-law action for child support is erroneous.

¶ 28 The cases cited by the dissent do not support the dissent's position that there is a common-law duty of support that is not tethered to some statutory authority. *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 268 (1988), involved the Parentage Act. *Dwyer v. Dwyer*, 366 Ill. 630, 633-34 (1937), involved the construction of the Adoption Act (Ill. Rev. Stat. 1935, ch. 4, ¶ 3). *Plaster v. Plaster*, 47 Ill. 290, 291 (1868), was an action for child support ancillary to a divorce decree. *Carson Pirie Scott & Co. v. Hyde*, 39 Ill. 2d 433, 434 (1968), upheld the Family Expense Act (Ill. Rev. Stat. 1965, ch. 6, ¶ 15) against frivolous constitutional assaults. The court held, not that there is an amorphous duty of support, but that family expenses are chargeable upon the property of both husband and wife in favor of their creditors. *Hyde*, 39 Ill. 2d at 434. *In re Marriage of Turk*, 2014 IL 116730, ¶ 14, involved the dissolution of the parties' marriage and the husband's desire to terminate his statutory child-support obligation. *In re Estate of Trevino*, 381 Ill. App. 3d 553, 554-57 (2008), involved the construction of a marital settlement agreement that was incorporated into a judgment of dissolution of marriage.

¶ 29 In considering whether a common-law duty to support Navid and Jukari devolves upon respondent, we note that the common-law duty of support is grounded in public policy, which recognizes that Illinois has a " 'strong interest in protecting and promoting the welfare of *its* children.' " (Emphasis added.) *T.P.S.*, 2012 IL App (5th) 120176, ¶ 34 (quoting *M.J.*, 203 Ill. 2d at 539). In *T.P.S.*, the court further stated that it is the "right of every child in *Illinois* to be supported by his or her parents." (Emphasis added.) *T.P.S.*, 2012 IL App (5th) 120176, ¶ 35. In *M.J.*, our supreme court declared that public policy seeks to prevent children from becoming public charges and straining Illinois's welfare system. *M.J.*, 203 Ill. 2d at 539. Respondent in

the present case has children in Illinois to support. He alleged that he cannot support both them and his children in Mexico. His financial affidavit underscores this point. It seems clear that, if there is a common-law duty of support, it extends only to respondent's children in Illinois.

¶ 30    We come to this conclusion after much deliberation. We are mindful that our supreme court in *M.J.* carefully restricted the common-law duty of support that it imposed to cases of artificial insemination. *M.J.*, 203 Ill. 2d at 542. As the court stated in *T.P.S.*, our supreme court looked only at the provisions of the Illinois Parentage Act to determine legislative intent with respect to "a very limited and specific category of children." *T.P.S.*, 2012 IL App (5th) 120176, ¶ 49. Therefore, *M.J.* cannot be construed to endorse a broader common-law duty of support. Consequently, if respondent owes a duty of support, it must be found in one or more statutes.

¶ 31    Nora and respondent are married. Under Illinois law, none of the conditions exist that would trigger a duty of support under section 505(a) of the Marriage Act. Pub. Act 99-90 (eff. Jan. 1, 2016) (amending 750 ILCS 5/505(a) (West 2014)). The Marriage Act authorizes support only where there is a pending proceeding for dissolution of marriage or for legal separation; a proceeding for child support following dissolution of the marriage by a court that lacked personal jurisdiction over an absent spouse; a proceeding for modification of a previous order for child support under section 510 of the Marriage Act; or any proceeding authorized under section 501 (temporary relief) or 601 (custody proceeding) of the Marriage Act. Consequently, if respondent owes a duty to support Navid and Jukari, the duty must be found elsewhere.

¶ 32    This brings us to the Department's contention that a duty of support exists under the Illinois Public Aid Code (305 ILCS 5/10-1 *et seq.* (West 2014)). Section 10-2 provides that

parents are severally liable for the support of any child under age 18 (305 ILCS 5/10-2 (West 2014)). The statute empowers the Department to provide child support enforcement services on behalf of aid recipients and nonrecipients alike. *In re Marriage of Lappe*, 176 Ill. 2d 414, 432-33 (1997).

¶ 33 The Public Aid Code does not apply to this case, because the Department is not providing Nora child support enforcement services pursuant to it. Nor could it. Nothing in the Public Aid Code authorizes the Department to bring a petition on behalf of out-of-state residents. That is why the Department brought the instant petition pursuant to the UIFSA.

¶ 34 Furthermore, the purpose of the Public Aid Code is to "assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State." 305 ILCS 5/1-1 (West 2014). As our supreme court explained in *Lappe*, one purpose of allowing the Department to enforce child support on behalf of nonrecipients is to reduce welfare costs by preventing families from becoming dependent on public aid as a result of unpaid child support. *Lappe*, 176 Ill. 2d at 434. Here, the opposite is the likely result. Respondent's Illinois family is at risk of becoming aid-dependent because of respondent's alleged obligation to pay child support abroad. Courts can consider the consequences that might result from construing a statute one way or another. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 441 (2010).

¶ 35 The last possible source of a duty of support is the Parentage Act. Its purpose is to provide a statutory mechanism that legally establishes parent and child relationships in Illinois. *Galvez v. Rentas*, 403 Ill. App. 3d 491, 494 (2010). Pursuant to section 14(a)(1) of the Parentage Act, child support is provided for only within the context of a judgment of parentage: "The judgment shall contain or explicitly reserve provisions concerning any duty and amount of

child support." 750 ILCS 45/14(a)(1) (West 2014). Section 305(b)(1) of the UIFSA allows the court, to the extent not prohibited by other law, to determine parentage. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/305(b)(1) (West 2014)). However, in its petition, the Department explicitly requested only an order of support and not a determination of parentage. Consequently, it is not clear that the trial court could apply the Parentage Act to find a duty of support.

¶ 36 Even if the Parentage Act applies, and even if the trial court were to determine that respondent is the natural father of Navid and Jukari, we agree with the court's conclusion that it was without authority to grant a support order. Section 14(a)(2) of the Parentage Act provides that, if the parentage order contains no explicit award of custody, the establishment of a support obligation in one parent "shall be considered a judgment granting custody to the other parent." 750 ILCS 45/14(a)(2) (West 2014). Thus, according to the plain language of the statute, a parentage order would necessarily "render [a] judgment *** relating to child custody," which the UIFSA forbids. Pub. Act 99-119 (eff. Jan. 1, 2016) (amending 750 ILCS 22/104(b)(2) (West 2014)).

¶ 37 The Department contends that the trial court would not need to make a parentage determination to set support under the Parentage Act. We disagree. The Parentage Act sets forth a two-step process, and the first step is to make a determination of parentage. *J.S.A. v. M.H.*, 384 Ill. App. 3d 998, 1011 (2008).

¶ 38 The Department further contends that construing the Parentage Act as we do renders the UIFSA "toothless." According to the Department, it is in the interests of both Illinois and Mexico to assist custodial parents in collecting child support from noncustodial parents. We do

not question the premise of that statement, but the Department has not demonstrated that Nora is legally entitled to child support under the facts of this case.

¶ 39    We disagree with the dissent that our holding will cause problems for Illinois parents who seek support from out-of-state parents.    We do not hold that child support is reserved strictly for Illinois residents.    Where there is statutory authority for the entry of a child support order on behalf of an out-of-state petitioner, who complies with the UIFSA, Illinois courts are authorized to act.

¶ 40    To make our holding crystal clear, we summarize it, as follows.    The UIFSA does not create a duty of support.    Section 303 of the UIFSA requires courts to look to the procedural and substantive law of the forum state to determine whether the respondent owes a duty of support.    The trial court properly looked to state statutes.    The Marriage Act does not create a duty of support, because no dissolution or legal separation proceeding is pending.    The Parentage Act does not apply, because (1) the Department is not seeking a parentage determination, and (2) a parentage determination would involve a custody judgment, which is prohibited by the UIFSA.    To the extent that there is a common-law duty of support, it applies only to children in Illinois.    There is no duty of support under the Public Aid Code, because the Department is not enforcing a child support obligation pursuant to the Public Aid Code. Further, applying the Public Aid Code could impoverish an Illinois family to the point of aid-dependency, rather than achieving the opposite outcome.    Accordingly, the court properly dismissed the Department's petition.

¶ 41                                III. CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court of McHenry County.

¶ 43    Affirmed.

¶ 44    PRESIDING JUSTICE SCHOSTOK, dissenting.

¶ 45    In this appeal, the majority holds that the common-law duty of a father to support his children applies only to children residing in Illinois, thus largely gutting the UIFSA. It also declines to enforce the statutory duty of support embodied in the Public Aid Code on the grounds that that statute does not apply here. Because I disagree with both of these propositions, I respectfully dissent.

¶ 46    As the majority correctly notes, the UIFSA permits the entry of an initial child support order, not just the registration and enforcement of preexisting child support orders. Under section 401 of the UIFSA, an Illinois court must enter a child support order "[u]pon [a] finding, after notice and opportunity to be heard, that a respondent owes a duty of support." 750 ILCS 22/401(c) (West 2014). The Department argues that Alfredo owes a duty of support because he has admitted that he is the father of the children for whom Nora is seeking support. This is a correct statement of the law: fathers (and mothers) have a legal duty to support their children. While the Department's arguments may have been overly focused on the UIFSA rather than the substantive law of Illinois, there is a wealth of support in that law for the imposition of a support order on Alfredo under the facts of this case.

¶ 47    Contrary to Alfredo's arguments, statutes such as the Marriage Act and the Parentage Act are not the primary (let alone the sole) source of parents' duty to support their children. Rather, this has been a fundamental principle at common law for centuries. "A parent's duty to support his or her minor child is among the oldest principles of law." *People ex rel. Sheppard v. Money*, 124 Ill. 2d 265, 269 (1988); see also *Dwyer v. Dwyer*, 366 Ill. 630, 634 (1937) ("[t]he duty of a parent to support his minor child arises out of the natural relationship"); *Plaster v.*

*Plaster*, 47 Ill. 290, 291 (1868) ("The law of nature, the usages of society, as well as the laws of all civilized countries, impose the duty upon the parent of the support, nurture and education of children.").

¶ 48     This duty of support is not affected by whether the parents are, or are not, married. Within a legally intact marriage, statutes have required married parents to pay for the support of their children as far back as 1874.   See *Carson Pirie Scott & Co. v. Hyde*, 39 Ill. 2d 433, 434 (1968) (discussing the Family Expense Act (Ill. Rev. Stat. 1965, ch. 68, ¶ 15), which provided that "[t]he expenses of the family and of the education of the children shall be chargeable upon the property of both husband and wife, or of either of them"); see also 750 ILCS 16/15 (West 2014) (the unexcused failure to support one's children is a Class A misdemeanor regardless of the defendant's marital status).   The Parentage Act of 1957 codified the extension of this duty to unmarried fathers, but it did not release married fathers from their historic duty.   Legally speaking, the fact that Nora and Alfredo are still married does not affect Alfredo's duty of support toward his children.   Moreover, the obligation to support one's children is not affected by whether the obligor parent has, or does not have, legal or physical custody of the children. *In re Marriage of Turk*, 2014 IL 116730, ¶ 31; *In re Estate of Trevino*, 381 Ill. App. 3d 553, 557 (2008).

¶ 49     The majority suggests that this common-law duty of parents to support their children has been abrogated by the enactment of statutes such as the Marriage Act and the Parentage Act. See *supra* ¶¶ 25-26.   However, the majority wholly fails to support this suggestion.   To the contrary, as the majority itself notes, courts have held that "no Illinois statute relieves parents of their common law duty to support their children."   *Supra* ¶ 25 (citing *Eckiss*, 261 Ill. App. 3d at 785).   When the General Assembly determined that marriage and divorce should henceforth be

regulated entirely by statute, it expressly invalidated common-law marriages. See 750 ILCS 5/214 (West 2014) (invalidating common-law marriages contracted in Illinois after June 30, 1905). The majority cannot identify any similar statute abrogating the common-law duty of child support.

¶ 50    Moreover, courts continue to recognize that common-law duty. Indeed, *M.J.*, upon which the majority relies, addressed the issue of whether the Illinois Parentage Act[5] "precludes common law claims for child support." *M.J.*, 203 Ill. 2d at 537. In identifying this as the legal issue, the supreme court implicitly recognized the continuing vitality of the common-law duty of support unless specifically abrogated by a statute. The supreme court held that the mother there could bring common-law claims seeking child support, because "if the legislature had intended to bar common law actions for child support, it would have clearly stated its intent, and we will not imply a legislative intent where none is expressed." *Id*. at 540. Nothing in *M.J.* supports the majority's strained conclusion that the supreme court did not recognize the broad and vibrant common-law duty of child support or that it intended to limit that duty only to artificial-insemination cases. *Supra* ¶ 30. Rather, read in context, the supreme court merely wished to emphasize that every artificial-insemination case must be decided on the facts of that case, and thus its holding was limited to the case before it. See *M.J.*, 203 Ill. 2d at 537-38, 542.

---

[5] For the sake of clarity, I note that the statute at issue in *M.J.* was the Illinois Parentage Act (750 ILCS 40/1 *et seq*. (West 1998)), which governs parental rights and duties when a child is born through artificial insemination, *not* the Illinois Parentage Act of 1984 (750 ILCS 45/1 *et seq*. (West 1986)) or its successor, the Illinois Parentage Act of 2015 (Pub. Act 99-85 (eff. Jan. 1, 2016)), both of which regulate the much broader subject of parent-child legal relationships. As used herein, "Parentage Act" refers to these latter two statutes.

However, the supreme court also noted that the public policy of Illinois recognizes "the right of *every child* to the physical, mental, emotional, and monetary support of his or her parents" (emphasis added) (*id.* at 539), and that courts have "a duty to ensure that the rights of children are adequately protected" (*id.* at 540). Thus, I see no basis for the majority's cramped view of the scope of the common-law duty of child support.

¶ 51 The majority also attempts to support its decision by suggesting that the common-law duty of child support applies only to children who reside within Illinois, drawing on the language of the appellate court in *T.P.S.*, 2012 IL App (5th) 120176, ¶ 35. This view is overly narrow, given the repeated statements by the supreme court that it is the public policy of Illinois to uphold the rights of "every child" (*M.J.*, 203 Ill. 2d at 539) and that "*[a]ll* children have the right to be supported by their parents, and are benefitted, both financially and otherwise, when an absent parent provides support" (emphasis in original) (*Lappe*, 176 Ill. 2d at 432). Even if the majority's view were correct, however, it fails to account for the application of the UIFSA.

¶ 52 The UIFSA, a uniform act adopted by every state, was created to facilitate the entry and reciprocal enforcement of child support orders across state lines. See *In re Marriage of Edelman*, 2015 IL App (2d) 140847, ¶ 15; *In re Marriage of Hartman*, 305 Ill. App. 3d 338, 342 (1999). In enacting the UIFSA, the Illinois legislature deliberately chose to enact a statutory mechanism that would enable out-of-state children to receive child support in the same manner as in-state children. Thus, if an Illinois child possesses a common-law right of action for child support against his or her parents, under the UIFSA a similar right must be extended to out-of-state children. That is the meaning of (and the reason for) section 303 of the UIFSA, which requires courts to apply the substantive law of Illinois when entering or enforcing child support orders on behalf of out-of-state children.

¶ 53    In and of themselves, the common-law and statutory duties of support are, as the majority says, driven by policy concerns for Illinois children.    Any state's laws would likely be driven by such provincial concerns.    But the entire purpose of the UIFSA is to break down those provincial walls.    The UIFSA specifically allows a foreign petitioner to go into the respondent's state and seek support.    Necessarily, the foreign petitioner will be seeking support for foreign children.    If the petition were subject to dismissal because the respondent's duty of support extended only to local children, a foreign petitioner would be left without recourse.    The rights extended under the UIFSA would be meaningless.

¶ 54    And, although in this case the majority purports to protect Alfredo's Illinois children, the majority's holding would cause real problems for other Illinois children in future cases.    What would prevent other states from applying the same reasoning when an Illinois mother with Illinois children seeks the entry of a child support order in another state?    The applicable duties of support in that other state are surely concerned only with that state's children.    If other states' courts applied the same reasoning as the majority here, Illinois children would be left without recourse.    This result is contrary to the stated purpose and express provisions of the UIFSA, which require the application of Illinois law in child support proceedings on behalf of out-of-state children.    Applying those provisions here, there is no legal basis for the majority's restriction of the common-law duty of child support to Illinois children.

¶ 55    Finally, even if there were no common-law duty of child support in Illinois and thus only a statute could furnish the basis for the entry of a child support order here, the Illinois Public Aid Code (305 ILCS 5/1-1 *et seq.* (West 2014)) unquestionably provides that basis.    Section 10-2 of that statute explicitly states that each spouse is liable for the other's support, and parents are liable for the support of their children, including adopted and illegitimate children.    305 ILCS

5/10-2 (West 2014). Moreover, as the majority concedes, child support services are available under the Public Aid Code not only to children who receive public aid, but also to children who do not. *Lappe*, 176 Ill. 2d at 432-33.

¶ 56 The majority seeks to evade the application of the Public Aid Code by stating that "the Department is not providing Nora [with] child support enforcement services pursuant to" that statute. *Supra* ¶ 33. The majority further asserts that the Department could not provide such services to an out-of-state parent such as Nora, because the Public Aid Code itself does not authorize that. Both of these assertions are incorrect.

¶ 57 The Department has stated repeatedly that it is providing Nora with child support enforcement services under the Public Aid Code. For instance, in response to Alfredo's motion to dismiss, the Department cited section 10-10 of the Public Aid Code (305 ILCS 5/10-10 (West 2014)) as a basis for its petition to establish child support on behalf of Nora and Alfredo's children, arguing that under that section, "[a]ctions may be brought on behalf of *any* person who is in need of support from 'responsible relatives.' " The Department also argued that it could provide child support enforcement services for Nora despite the fact that she was not receiving public aid from the State of Illinois—a clear statement that it was providing such services pursuant to the Public Aid Code. Likewise, when this court ordered supplemental briefing on the issue of the applicable substantive law of Illinois under section 303 of the UIFSA, the Department asserted that the Public Aid Code provided a statutory basis for Alfredo's duty of support. Thus, the majority is simply incorrect in stating that the Department is not providing Nora with child support enforcement services pursuant to the Public Aid Code.

¶ 58 Moreover, even if the Department had not identified the Public Aid Code as one of the bases for the duty of child support that it seeks to enforce, that would not mean that a court

should ignore the provisions of the Public Aid Code that are directly relevant to this case. As the Department has repeatedly argued, if both Nora and Alfredo lived in Illinois, the Public Aid Code would provide a legal basis for the Department's petition to establish child support for their children, regardless of the fact that Nora and Alfredo remain married. Section 10-1 states that "[t]he primary and continuing obligation of the family unit for self-support *** applies whether the family unit of parents and children or of husband and wife remains intact and resides in a common household or whether the unit has been broken by absence of one or more members of the unit." 305 ILCS 5/10-1 (West 2014). Thus, the Department may provide child support services to spouses in intact marriages.

¶ 59 The majority's statement that the Department is not authorized to provide child support services to out-of-state parents like Nora under the Public Aid Code is likewise incorrect. Tellingly, the majority identifies no provision of the Public Aid Code that contains such a prohibition. When coupled with the General Assembly's clear directive, embodied in the UIFSA, that Illinois courts assist out-of-state parents in obtaining child support from parents living in Illinois, the applicability of the Public Aid Code to this case—and Alfredo's legal duty of support that the Department seeks to enforce—is undeniable.

¶ 60 In summary, both the common-law duty of parents to support their children and the Public Aid Code provide ample bases for the entry of a child support order here, where Alfredo has conceded his paternity of the children. Accordingly, there is no need to rely on the Parentage Act and no need to become entangled in the issue of whether a child support order entered under the Parentage Act would transmute Nora's undisputed physical custody of the children into legal custody. For all of these reasons, I believe the correct course is to reverse

the trial court's dismissal of the Department's petition and remand for the setting of an appropriate amount of support and the determination of any arrearage.